UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SARYAN MEL ROSARIO TORRES, o/b/o
G.S.R.R.,

        Plaintiff,

        v.

ANDREW SAUL, Commissioner of Social
Security,

        Defendant.

_____

17-CV-1061

Decision & Order

On October 10, 2017, the plaintiff, Saryan Mel Rosario Torres, brought this action under the Social Security Act ("the Act") on behalf of the claimant, G.S.R.R., a minor child under 18 years of age. She seeks review of the determination by the Commissioner of Social Security ("Commissioner") that G.S.R.R. was not disabled. Docket Item 1. On August 29, 2018, Torres moved for judgment on the pleadings, Docket Item 12, and on October 29, 2018, the Commissioner responded and cross-moved for judgment on the pleadings, Docket Item 16. Each side then filed a "Notice of No Reply." Docket Items 17 and 19.

For the reasons stated below, this Court grants Torres's motion in part and denies the Commissioner's cross-motion.

## BACKGROUND

### I. PROCEDURAL HISTORY

On September 10, 2013, Torres applied for Supplemental Security Income benefits on behalf of G.S.R.R. Docket Item 9 at 25. She claimed that G.S.R.R. had been disabled since July 10, 2013. *Id.*

On February 10, 2014, Torres received notice that her application on behalf of G.S.R.R. was denied because he was not disabled under the Act. *Id.* She requested a hearing before an administrative law judge ("ALJ"), which was held on April 21, 2016. *Id.* The ALJ then issued a decision on June 10, 2016, confirming the finding that G.S.R.R. was not disabled. *Id.* at 42. Torres appealed the ALJ's decision, but her appeal was denied, and the decision then became final. *Id.* at 5.

### II. CHILDREN'S DISABILITY STANDARD

A child under 18 is disabled under section 1614(a)(3)(C)(i) of the Social Security Act if he or she has a "medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." In denying Torres's application, the ALJ evaluated her claim under the Social Security Administration's three-step evaluation process to determine whether an individual under the age of 18 is disabled. *See* 20 C.F.R. § 416.924(a).

At the first step, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity ("SGA"), not surprisingly defined as work activity that is both substantial and gainful. *Id.* § 416.972. "Substantial work activity" involves significant physical or mental activities. *Id.* § 416.972(a). "Gainful work activity" is work

2

usually done for pay or profit, whether or not profit is realized. *Id.* § 416.972(b). If the claimant is engaged in SGA, the claimant is not disabled regardless of medical condition, age, education, or work experience. *Id.* at § 416.924(b). If the claimant is not engaged in SGA, the ALJ proceeds to the next step. *Id.*

At step two, the ALJ must determine whether the claimant has a medically determinable impairment, or combination of impairments, that is "severe." *Id.* at § 416.924(a). For a claimant under the age of 18, an impairment is not severe if it is a slight abnormality or a combination of such abnormalities that causes no more than minimal functional limitations. *Id.* § 416.924(c). If the claimant has a severe impairment, the ALJ proceeds to the third step. *Id.* § 416.924(a).

At step three, the ALJ must determine whether the impairment or combination of impairments meet, medically equal, or functionally equal an impairment in the listings. *Id.* § 416.924(d). If the claimant has an impairment or combination of impairments that meet, medically equal, or functionally equal the severity of one in the listings, and if such impairments have lasted or are expected to last for a continuous period of at least 12 months, then the claimant is disabled. *Id.* § 416.924(d). If not, then the claimant is not disabled. *Id.*

To determine whether impairments functionally equal one in the listings, the ALJ assesses the claimant's functioning in six separate "domains": (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. *Id.* § 416.926a(b)(1). That assessment compares how the child performs in each of these domains with the typical functioning of a child of the same

3

age without impairment. *Id.* § 416.926a(b). The child's impairment is of listing-level severity if there are "marked" limitations in at least two domains or an "extreme" limitation in one domain. *Id.* § 416.926a(d). In determining whether impairments are "marked" or "extreme," the ALJ considers functional limitations that result from all impairments, including impairments that have been deemed not severe, and their cumulative effects. *Id.* §§ 416.923, 416.924a(b)(4), 416.926a(a), (c), and (e)(1)(i).

A "marked" limitation results when impairments "seriously interfere with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(2)(i). A "marked" limitation is "more than moderate" but "less than extreme." *Id.* On a standardized test designed to measure abilities within a certain domain, a "marked limitation" means a score of at least two, but less than three, standard deviations below the mean and a level of day-to-day functioning consistent with that score. *Id.* §§ 416.926a(e)(2)(i), 416.926a(e)(2)(iii). For example, in the domain of "health and well-being," a child is considered to have a "marked" limitation if he or she is frequently ill as a result of his or her impairments or exhibits frequent worsening of symptoms resulting in medically-documented exacerbations. *Id.* § 416.926a(e)(2)(iv). "Frequent" means episodes that occur on average every four months and last two weeks or more, or that occur more often than three times a year but last less than two weeks, or that occur less often but are of overall equivalent severity. *Id.*

An "extreme" limitation, on the other hand, results when impairments "interfere[ ] very seriously with [the child's] ability to independently initiate, sustain, or complete activities." *Id.* § 416.926a(e)(3)(i). An "extreme" limitation is one that is "more than

4

marked." *Id.* The ALJ will determine a limitation to be "extreme" when a comprehensive standardized test designed to measure functioning in a particular domain results in a score of three or more standard deviations below the mean and day-to-day functioning consistent with that score. *Id.* § 416.926a(e)(3)(iii). In the domain of "health and well-being," for example, the ALJ will consider a child to have an "extreme" limitation if the child is frequently ill or if impairments frequently become exacerbated, resulting in medically documented symptoms significantly more than those of a "marked" limitation. *Id.* § 416.926a(e)(3)(iv).

### III. THE ALJ'S DECISION

The ALJ determined that G.S.R.R. was born on September 30, 2002, and therefore school-aged when the application was filed on September 20, 2013. Docket Item 9 at 28. At step one, the ALJ found that G.S.R.R. had not engaged in SGA since the application date. *Id.* At step two, the ALJ found that G.S.R.R. suffered from several severe impairments: "Asthma, ADHD, Bilateral Hearing Loss and learning disability." *Id.* Although the ALJ found these impairments to be severe, at step three he determined that they did not meet or equal any of the Childhood Listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, because the impairments caused only minimal limitations. *Id.*

As required by 20 C.F.R. § 416.924a(a) and SSR 09-2p, the ALJ considered all relevant evidence in the case record, which included "objective medical evidence and other relevant evidence from medical sources; information from other sources, such as school teachers, family members, or friends; the claimant's statements . . .; and any other relevant evidence in the case record, including how the claimant functions over time and in all settings." Docket Item 9 at 28. The ALJ also explicitly considered the

5

"whole child," as required by 20 C.F.R. § 416.924a(b) and (c) and explained in SSR 09-1p. Docket Item 9 at 28. In doing so, the ALJ evaluated G.S.R.R.'s abilities compared to other children his age without impairments, as well as the interactive and cumulative effects of all G.S.R.R.'s impairments, severe or otherwise. *Id.* Finally, the ALJ considered "the type, extent, and frequency of help the claimant needs to function." *Id.*

In addressing G.S.R.R.'s symptoms, the ALJ followed a two-step process to evaluate whether (1) there is an underlying medically determinable physical or mental impairment that could be expected to produce his symptoms and (2) the intensity, persistence, and limiting effects of his symptoms interferes with his functioning. *Id.* As part of his analysis, the ALJ addressed G.S.R.R.'s abilities in each of the six domains for determining functional equivalence to the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Docket Item 9 at 35-42. The ALJ found less-than-marked limitations in the five domains of "acquiring and using information," "attending and completing tasks," "interacting and relating with others," "moving and manipulating objects," and "health and physical well-being." *Id.* And he found no limitation in the sixth domain—G.S.R.R.'s ability care for himself. *Id.*

## STANDARD OF REVIEW

"The scope of review of a disability determination . . . involves two levels of inquiry." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). The court "must first decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* This includes ensuring "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes of the Social Security Act." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quoting *Cruz v.*

6

*Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Then, the court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## DISCUSSION

### I. ALLEGATIONS

Torres objects to the ALJ's findings of less-than-marked limitations in the domains of acquiring and using information and attending and completing tasks. Docket Item 12-1 at 13, 17. Specifically, she argues that these determinations were not supported by substantial evidence. *Id.* Torres also argues that G.S.R.R. was denied his due process right to a full hearing under the Act because the translator and recording equipment were not sufficient. *Id.* at 19-23.

### II. ANALYSIS

#### A. Substantial Evidence

In evaluating a claim of disability, the Commissioner "will consider all *evidence* in [the claimant's] case record." 20 C.F.R. § 404.1520(a)(3) (emphasis added). Relevant

7

evidence includes objective medical evidence such as laboratory findings; medical opinions and other medical evidence; nonmedical evidence such as the claimant's and third parties' testimony; and prior administrative findings. 20 C.F.R. § 404.1513. "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (citing 20 C.F.R. § 416.913(a) and SSR 06-03P, 2006 WL 2329939 (Aug. 9, 2009)).

The ALJ must also consider the opinions of "other sources"—for example, school teachers—but the ALJ is not obliged to assign weight or give deference to such sources. *Id.* Nonetheless, the ALJ "should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." SSR 06-03P, at *6. "[W]hile the Commissioner is thus free to decide that the opinions of 'other sources' . . . are entitled to no weight or little weight, those decisions should be explained." *Slattery v. Colvin*, 111 F.Supp.3d 360, 372 (W.D.N.Y. 2015) (quoting *Oaks v. Colvin*, 2014 WL 5782486, at *8 (W.D.N.Y. Nov. 6, 2014)). That is especially so when they "may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2).

Some courts have found that an ALJ has an "obligation to explain his decision to assign limited weight to the opinions of a claimant's teachers," *see, e.g.*, *Vazquez ex rel.*

*J.V. v. Colvin*, 2015 WL 1241251, at *20 (W.D.N.Y. Mar. 18, 2015), because of a teacher's "extensive, first-hand opportunities to observe [the c]laimant and assess his limitations," *Stanley v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 382, 395 (N.D.N.Y. 2014). Regardless of whether there is such an obligation, a teacher's familiarity with a child may well be "good reason[]" to assign significant weight to a teacher's opinion. *Bushey v. Colvin*, 552 Fed. Appx. 97, 98 (2d Cir. 2014); 20 C.F.R. §§ 404.1527(c), (f).

Here, Mrs. Olga Camacho, G.S.R.R.'s teacher, completed a Social Security Administration "Teacher Questionnaire" regarding G.S.R.R.'s functioning in each of the six domains. Docket Item 9 at 368. In the domain of acquiring and using information, she opined that G.S.R.R. "ha[d] problems functioning in this domain." *Id.* at 362. Mrs. Camacho compared G.S.R.R.'s functioning in several activities to that of a child of the same age without impairments, and she rated him as having either "[a]n obvious problem" or "[a] serious problem" in every category. *Id.* She explained that G.S.R.R. "needs extra support with all new material taught using multiple visuals and descriptions" because he "has difficulty with comprehending information, so it needs to be broken down into small chunks of information for him." *Id.* For "class discussions," Mrs. Camacho wrote that G.S.R.R. "needs prompts for answering questions," and she concluded that he "is not as independent as he should be at this age." *Id.*

Mrs. Camacho also opined that G.S.R.R. "has problems functioning" in the domain of attending and completing tasks. *Id.* at 636. She compared G.S.R.R. to a child of the same age without impairments, and she opined that he had "[a] very serious problem" in six of ten categories and either "[a]n obvious problem" or "[a] serious problem" in every other category except "[w]aiting to take turns." *Id.* She also noted his

9

"difficulty with attending to spoken direction" as well as his need for "a lot of redirection, reminders and eye to eye contact as well as repetition to stay on task." *Id.*

In his decision, the ALJ recounted Mrs. Camacho's opinion that G.S.R.R. has "problems" in acquiring and using information and "multiple limitations" in attending and completing tasks. *Id.* at 34. After reciting that opinion, the ALJ gave them "some weight . . . since her opinion is somewhat consistent with other evidence of record." *Id.* at 35. But when the ALJ later found less-than-marked limitation in those two domains—acquiring and using information and attending and completing tasks—he did not discuss, or even mention, Mrs. Camacho's opinion regarding those domains. *Id.* at 35-38. For acquiring and using information, the ALJ cited several IQ tests and concluded that G.S.R.R. "has the innate ability to do better in school but does not complete assignments or shows poor effort."[1] *Id.* at 36-37. For attending and completing tasks, the ALJ pointed to G.S.R.R.'s individual education plans and child evaluations as evidence that "although he carries a diagnosis of ADHD he is doing well." *Id.* at 38.

In other words, the ALJ never explained how Mrs. Camacho's opinion that G.S.R.R. "ha[d] problems" in acquiring and using information and "multiple limitations" in attending and completing tasks, *id.* at 34, factored in to his analysis of these two domains. He may have been correct in giving that opinion "some weight" because it was "somewhat consistent" with "other evidence of record." *Id.* at 35. But he never explained what "other evidence" he referred to, or how Mrs. Camacho's opinion was

---

[1] Although test scores are certainly relevant to determining a marked impairment, the regulations provide that the Commissioner "will consider [the claimant's] test scores together with the other information [in the record] about your functioning, including reports of classroom performance and the observations of school personnel." 20 C.F.R. § 416.926a.

10

"somewhat consistent" with it.  He never addressed whether there was additional evidence inconsistent with Mrs. Camacho's opinion, therefore justifying his giving her opinion only *some* weight.  And, most basically, he never addressed that opinion in his analysis of the key domains.

What is more, there were good reasons why the ALJ might have assigned greater weight to Mrs. Camacho's opinion.  In particular, Mrs. Camacho had known G.S.R.R. for about six months, and had seem him daily from 9:00 a.m. until 3:35 p.m., by the time she gave her opinion.  *Id.* at 361.  Although the ALJ paid lip service to that long and intense relationship, *id.* at 34, he did not explain how or why it affected the weight her opinion deserved.  In fact, the length, consistency, nature, and extent of Mrs. Camacho's relationship with G.S.R.R. may well and provide reasons to assign greater weight to her opinion.  *See Bushey*, 552 Fed. Appx. at 98; 20 C.F.R. §§ 404.1527(c), (f).

The ALJ's vague explanation of the weight assigned to Mrs. Camacho's opinion is especially problematic because her opinion "may have [had] an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2).  Her opinion that G.S.R.R. had "problems" in acquiring and using information and "multiple limitations" in attending and completing tasks might well evidence marked limitations in those domains.  But despite assigning Mrs. Camacho's opinion "some weight," the ALJ's decision ignored it in evaluating the domains of acquiring and using information and attending and completing tasks.  *Id.* at 36-38.

In sum, the ALJ's decision does not "permit the reviewer to glean the rationale" for his consideration or treatment of Mrs. Camacho's opinion about G.S.R.R.'s ability to acquire and use information or attend and complete tasks.  *Porter*, 2016 WL 1084162,

at *4.  That opinion might significantly affect the determination of whether G.S.R.R. is disabled, but it remains unclear how or whether it affected the ALJ's decision.  This matter therefore is remanded so that the ALJ can further develop the medical record or otherwise consider and address the opinion of Mrs. Camacho or G.S.R.R.'s other teachers regarding G.S.R.R.'s limitations in acquiring or using information and attending and completing tasks.

### B. Full and Fair Hearing

Torres also argues that G.S.R.R. did not receive a full hearing under the Act because the interpreter did not translate verbatim at the hearing and because "the microphone failed to effectively amplify the voices of the parties in the proceeding."  Docket Item 12-1 at 20-21.  That objection is unavailing.

While a violation of the Social Security Administration's interpreter policy—such as denying an interpreter—can result in the denial of a full and fair hearing, *see Alvarex v. Comm'r of Soc. Sec.*, 2011 WL 2600712, at *3 (D.N.J. June 28, 2011), a claimant is not denied a full and fair hearing when he is "provided with interpretation services" and his "answers [are] generally responsive to the questions put to" him, *Tankisi v. Comm'r of Soc. Sec.*, 2013 WL 1296489, at *2 (2d Cir. Apr. 2, 2013).

Here, although Torres cites several points in the transcript at which the interpreter sought to clarify testimony with follow-up questions or summaries, nothing indicates that the claimant or his representative "did not understand the proceedings."  *Id.*  In fact, Torres "has failed to explain how she was disadvantaged by any interpretation issues."  *Id.*  The same is true regarding Torres' complaint about the microphones.  Because Torres has "not identified a specific point that she was unable to

12

present or understand at the hearing," any issues Torres raises about the interpreter or the microphone at that hearing "did not result in a denial of a full and fair hearing." *Id.*

## **CONCLUSION**

For the reasons stated above, the Commissioner's motion for judgment on the pleadings, Docket Item 16, is DENIED, and Torres's motion for judgment on the pleadings, Docket Item 12, is GRANTED in part and DENIED in part. The decision of the Commissioner is VACATED, and the matter is REMANDED for further administrative proceedings consistent with this decision.

SO ORDERED.

Dated: August 30, 2019
Buffalo, New York

    *s/ Lawrence J. Vilardo*
LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE